**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

Kent M. Walker (Bar No. 173700)
kwalker@lewiskohn.com
LEWIS KOHN & WALKER, LLP
15050 Avenue of Science, Suite 201
San Diego, California 92128
Telephone:  (858) 436-1333
Facsimile:  (858) 436-1349

Gregory S. Arovas, P.C. (*pro hac vice*)
garovas@kirkland.com
Todd M. Friedman, P.C. (*pro hac vice*)
todd.friedman@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Attorneys for Defendants/Counterclaim
Plaintiffs Samsung Electronics Co., Ltd.
and Samsung Electronics America, Inc.

Listing of counsel continued on page 2.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARGAN PRECISION CO., LTD., | CASE NO. 13-CV-2740 DMS (NLS) |
| Plaintiff-Counterclaim Defendant, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAMSUNG'S SUMMARY JUDGMENT AND *DAUBERT* MOTIONS** |
| v. | |
| SAMSUNG   ELECTRONICS   CO., LTD. *et. al.*, | **JURY TRIAL DEMANDED** |
| Defendants and Counterclaim Plaintiffs. | Judge:        Hon. Dana M. Sabraw Hearing Date: October 23, 2015 Time:            1:30 p.m. Courtroom:   13A |

Edward C. Donovan (*pro hac vice*)
edonovan@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

David W. Higer (*pro hac vice*)
dhiger@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Attorneys for Defendants/Counterclaim
Plaintiffs Samsung Electronics Co., Ltd.
and Samsung Electronics America, Inc.

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................... 1

I. SUMMARY JUDGMENT ......................................................................... 1
    A. General Legal Standards ................................................................ 1
    B. Summary Judgment of Non-Infringement ..................................... 2
        1. Samsung is entitled to summary judgment of non-infringement of the '860, '190, and '191 Patents ..................... 2
        2. Samsung is entitled to summary judgment of non-infringement of the '807 Patent ................................................ 3
    C. Summary Judgment of Invalidity .................................................. 4
        1. Samsung is entitled to summary judgment that TW I255361 anticipates and/or renders obvious the '602 patent asserted claims ........................................................................................ 6
        2. Samsung is entitled to summary judgment that the asserted claims are invalid for lack of written description ..................... 9
    D. Summary Judgment on Damages Issues ....................................... 16
        1. Samsung is entitled to summary judgment of no constructive notice because Largan failed to mark under 35 U.S.C. § 287 .. 16
        2. ███████████████████████████████████████████ ............... 19
        3. Samsung is entitled to summary judgment of no willful infringement. ................................................................................ 20

II. *DAUBERT* EXCLUSIONS ...................................................................... 23
    A. General Legal Standards ................................................................ 23
    B. The Court Should Exclude Opinions From Largan's Experts Regarding Reverse Engineering And Patent Benefits ..................... 24
        1. Dr. Bentley's reverse engineering analysis relies on the unreliable work and opinions of others ..................................... 25
        2. Dr. Bentley performed no thickness or image quality analysis .......................................................................................... 29
    C. The Court Should Exclude Opinions From Largan's Experts Regarding Largan's Allegedly Embodying Products ..................... 30
    D. The Johnson Survey And Related Opinions Should Be Excluded ..... 31

III. CONCLUSION .......................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  2010 WL 5186393 (D. Utah Dec. 15, 2010) ................................................. 32, 33

*Abbvie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*,
  759 F.3d 1285 (Fed. Cir. 2014) ........................................................... 5, 12, 13

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) ...................................................................... 16

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994) ................................................................. 17, 19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................... 1

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  67 F. Supp. 3d 1100 (N.D. Cal. 2014) ........................................................ 20

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ............................................................... 6, 13

*Atl. Research Mktg. Sys., Inc. v. Troy*,
  659 F.3d 1345 (Fed. Cir. 2011) ............................................................... 6, 16

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
  853 F.2d 1557 (Fed. Cir. 1988) ................................................................... 1

*Black & Decker*,
  260 F. App'x at 290 .................................................................................. 22

*Butamax Advanced Biofuels LLC v. Gevo, Inc.*,
  -- F. Supp. 3d ---, 2015 WL 4611285 (D. Del. 2015) ................................... 21

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  -- F.3d ---, 2015 WL 4639309, at *14-15 (Fed. Cir. Aug. 4, 2015) ............. 23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................... 2

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) ........................................................................24

*Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*,
    130 F. Supp. 2d 1152 (C.D.Cal. 2001) ........................................................18

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)............................................................................passim

*DR Sys., Inc. v. Eastman Kodak Co.*,
    2009 WL 2632685 (S.D. Cal. Aug. 24, 2009)...........................................19

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006) ....................................................................2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ......................................................................................6

*Fractus, S.A. v. Samsung*,
    2011, 09-cv-203-LED-JDL, 2011 WL 7563820 (E.D. Tex. Apr. 29, 2011) ......32, 34

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) .....................................................31, 32

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
    527 F.3d 1318 (Fed. Cir. 2008) ....................................................................5

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
    585 F. Supp. 2d 636 (D. Del. 2008) ...........................................................22

*In re Geisler*,
    116 F.3d 1465 (Fed. Cir. 1997) ....................................................................5

*In re Kathawala*,
    9 F.3d 942 (Fed. Cir. 1993) ..........................................................................7

*In re Peterson*,
    315 F.3d 1325 (Fed. Cir. 2003) ....................................................................5

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) .....................................................20, 21, 22

*In re Woodruff*,
    919 F.2d 1575 (Fed. Cir. 1990) ....................................................................5

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.,*
   392 F.3d 1317 (Fed. Cir. 2004) ..................................................................5, 8, 9

*King Instruments Corp. v. Perego,*
   65 F.3d 941 (Fed. Cir. 1995) ...........................................................................20

*KSR Int'l Co. v. Teleflex Inc.,*
   550 U.S. 398 (2007)............................................................................................5

*Kumho Tire Co., Ltd. v. Carmichael,*
   526 U.S. 137 (1999)....................................................................................23, 24

*Lucent Tech., Inc. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009) .......................................................................34

*Lyman v. St. Jude Medical S.C., Inc.,*
   580 F. Supp. 2d 719 (E.D. Wisc. 2008)...........................................................33

*Matthiesen v. Banc One Mortgage Corp.,*
   173 F.3d 1242 (10th Cir. 1999) .....................................................................8, 9

*Maxwell v. J. Baker, Inc.,*
   86 F.3d 1098 (Fed. Cir. 1996) .........................................................................16

*Motivation Innovations LLC v. Ulta Salon Cosmetics & Fragrance Inc.,*
   59 F. Supp. 3d 663 (D. Del. 2014) .....................................................................3

*Multimedia Patent Tr. v. Apple Inc.,*
   2012 WL 6863471 (N.D. Cal. Nov. 9, 2012) ..............................................21, 23

*Nazomi Comm'cns, Inc. v. Microsoft Mobile Oy,*
   597 F. App'x 1075 (Fed. Cir. Nov. 26, 2014) ....................................................3

*O'Reilly v. Morse,*
   56 U.S. 62 (1853)..........................................................................................6, 16

*Ormco Corp. v. Align Tech., Inc.,*
   463 F.3d 1299 (Fed. Cir. 2006) .........................................................................8

*Pacing Techs., LLC v. Garmin Int'l, Inc.,*
   2013 WL 444642 (S.D. Cal. 2013)....................................................................22

*Perricone v. Medicis Pharm. Corp.,*
   432 F.3d 1368 (Fed. Cir. 2005) ......................................................................7, 8

## TABLE OF AUTHORITIES (CONT'D)

Page(s)

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007) ................................................................24

*ResQNet.com v. Lansa*,
    594 F.3d 860 (Fed. Cir. 2010) ........................................................... 31, 34

*Smith v. Pac. Bell. Tel. Co., Inc.*,
    649 F. Supp. 2d 1073 (E.D. Cal. 2009) ................................................ 8, 9

*Teashot LLC v. Green Mountain Coffee Roasters, Inc.*,
    595 F. App'x 983 (Fed. Cir. 2015) .............................................................4

*Titanium Metals Corp. of Am. v. Banner*,
    778 F.2d 775 (Fed. Cir. 1985) ......................................................... 5, 8, 9

*U.S. Philips Corp. v. Iwasaki Elec. Co.*,
    505 F.3d 1371 (Fed. Cir. 2007) ............................................................ 2, 4

*United States v. Chang*,
    207 F.3d 1169 (9th Cir. 2000) ................................................................24

*United States v. Freeman*,
    498 F.3d 893 (9th Cir. 2007) ..................................................................24

*Univ. Of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004) ................................................................16

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    34 F. Supp. 3d 1061 (C.D.Cal. 2014) .....................................................18

**Statutes**

35 U.S.C. § 103(a) (2006) ..............................................................................5

35 U.S.C. § 271(a) ........................................................................................18

35 U.S.C. § 287 ...................................................................... 16, 17, 18, 19

35 U.S.C. § 287(a) .................................................................................16, 17

35 U.S.C. 102(d) .........................................................................................6, 7

M.P.E.P. § 2135.01(IV) ..................................................................................7

<u>**TABLE OF AUTHORITIES (CONT'D)**</u>

<u>**Page(s)**</u>

**Rules**

Fed. R. Civ. P. 56(c) .................................................................................. 1

Fed. R. Evid. 702 .................................................................................... 23

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

Samsung moves for summary judgment on: (1) non-infringement of the '860, '190, '191, and '807 patents; (2) anticipation/obviousness of the '602 patent; (3) lack of written description for all patents-in-suit; (4) no pre-suit damages due to lack of marking; (5) the '691 patent does not block Samsung's non-infringing alternatives; and (6) no willfulness.   Summary judgment is appropriate; Largan has not, and cannot, raise a genuine issue of material fact on these issues and Samsung is entitled to judgment as a matter of law.

Samsung also moves to exclude the following opinions of Largan experts Dr. Julie Bentley, Mr. Brian Napper, and Mr. Philip Johnson: (1) reverse engineering and patent benefit opinions (Bentley and Napper), (2) alleged embodying product-based opinions (Bentley and Napper), and (3) Largan's survey and opinions based thereon (Johnson and Napper).   Each fails to meet the necessary safeguards for reliability and the court should exercise its "gate-keeping" function and exclude them.

## ARGUMENT

## I.   SUMMARY JUDGMENT

### A.   General Legal Standards[1]

The Court should grant summary judgment because the pleadings, depositions, written discovery and accompanying declarations show that there is no genuine issue as to any material fact and Samsung is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]here is no issue for trial unless there is sufficient evidence favoring [Largan] for a jury to return a verdict for [it].  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).  Largan must do more than merely raise some doubt as to the existence of a fact; it must provide evidence which would be sufficient to require submission of a dispute to the jury. *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).

---

[1] Additional legal standards related to each individual issue are set forth in the applicable sections below.  All emphasis is added, unless otherwise indicated.

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

**B.      Summary Judgment of Non-Infringement**

Summary judgment of non-infringement is appropriate here because, in light of the undisputed material facts, "no reasonable jury could find that every limitation recited in [each] properly construed claim [is] found in the accused [products] either literally or under the doctrine of equivalents."  *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1374-75 (Fed. Cir. 2007).   Samsung discharges its summary judgment burden by pointing out that there is an absence of evidence to support Largan's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307-09 (Fed. Cir. 2006).

**1.      Samsung is entitled to summary judgment of non-infringement of the '860, '190, and '191 Patents**

The Court should grant summary judgment of non-infringement of the '860, '190, and '191 patents for which Largan has identified ***no*** admissible evidence.

**Undisputed Material Facts.**  Largan accuses the rear lenses in Samsung's S3, S4 Active, S4 mini, Note 2, ATIV S NEO, and Mega 6.3 products of infringing the '860, '190, and '191 patents, and the rear lenses in Samsung's S4 and Note 3 products of infringing the '191 patent.  (Statement of Material Fact ("SMF") ¶¶ 347, 398, 477.) Lens design files define the relevant aspects of the accused lenses.  (*Id.* ¶ 598.)

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████   Dr. Bentley instead relies solely on Largan's "reverse engineering" analysis for the '860, '190, and '191 Patents.  (SMF ¶¶ 349, 400, 480.)  But that analysis was never referenced in Largan's contentions (*id.*

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

¶617), and the related files were only produced at 11:59 pm Pacific on the last day of fact discovery (*id.* ¶¶ 613-14).

**Argument.**   In alleging infringement on these three patents, Largan made a strategic decision to not pursue discovery on the accused lenses—despite its bearing the burden of proof—and instead withheld its only "evidence"—its self-serving "reverse engineering"—until 11:59 pm on the last day of discovery and analysis until expert reports.   For the reasons set forth in Samsung's motion to strike (Dkt. 162) and in § II.B below, the Court should exclude Largan's untimely and flawed "reverse engineering" analysis.   Without it, Largan has *no* evidence of infringement and no one but itself to blame.   Absent evidence of infringement, summary judgment of non-infringement should be granted.   *See, e.g., Nazomi Comm'cns, Inc. v. Microsoft Mobile Oy*, 597 F. App'x 1075 (Fed. Cir. Nov. 26, 2014) (affirming summary judgment of non-infringement after infringement arguments excluded for violating Patent Local Rules); *Motivation Innovations LLC v. Ulta Salon Cosmetics & Fragrance Inc.*, 59 F. Supp. 3d 663, 670-71 (D. Del. 2014).

> **2.    Samsung is entitled to summary judgment of non-infringement of the '807 Patent**

The Court also should grant summary judgment of non-infringement of the '807 patent because: (1) Dr. Bentley again relies solely on Largan's untimely, flawed "reverse engineering" analysis; and  (2) the only reliable evidence of these accused lenses' properties—the lens design file provided by Samsung's vendor—conclusively establishes non-infringement.

**Undisputed Material Facts.**   Largan accuses front lenses in Samsung's S3, S4 mini, ATIV S NEO, Note 2, Mega 6.3, Note 10.1, ATIV Odyssey, ATIV Tab, Nexus 10, and Gear of infringing the '807 patent.   (SMF ¶ 271.) ███████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

Sole asserted claim 1 of the '807 patent requires that the radii of curvature of the front (*R1*) and back (*R2*) surfaces of the first lens element satisfy the following relation: -0.30<*R1/R2*<0.00.  (*Id.* ¶ 277.)

Although listed in the materials considered, Dr. Bentley's report ███████████████, relying instead on "reverse engineering."  (*Id.* ¶¶ 280-81, 557.)   Yet, Dr. Bentley asserted that "[w]hen a lens design file is available, or provided, *'reverse engineering' of a lens assembly is unnecessary*."  (*Id.* ¶¶ 599.)

**Argument.**

instead relying solely on "reverse engineering."  (*Id.* ¶ 281.)   But that cannot raise a genuine issue of material fact because: (1) it is untimely and flawed and should be excluded (Dkt. 162; Section II.B, *infra*.); and (2) in any event, Dr. Bentley admitted the lens design file provides the best evidence, rendering reverse engineering "unnecessary."[2]  (*Id.* ¶ 599.)   Thus, the only competent and admissible evidence of the accused lens properties, the lens design file, demonstrates non-infringement.   The Court should grant summary judgment.  *U.S. Philips*, 505 F.3d at 1374–75.

**C.    Summary Judgment of Invalidity**

Summary judgment of anticipation of the '602 patent is appropriate because there is no genuine dispute that a single prior art reference discloses all elements of

---

[2] Largan cannot rely on the doctrine of equivalents, because it waived such reliance by not raising it during fact or expert discovery.  (SMF ¶ 283.)  *See Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x 983, 987-88 (Fed. Cir. 2015).

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

the asserted claims.  *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).  Alternatively, summary judgment of obviousness is warranted because there is no genuine dispute of material fact that the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the art.  35 U.S.C. § 103(a) (2006); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 424-28 (2007).  "[W]hen the difference between the claimed invention and the prior art is the range or value of a particular variable, then a patent should not issue if the difference in range or value is minor."  *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1321–22 (Fed. Cir. 2004) (internal quotations omitted); *see also Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 783 (Fed. Cir. 1985).  When, as here, the claimed invention falls within the range the prior art disclosed, the claims are presumed obvious.  *Id.*  That presumption may only be rebutted if it can be shown: "(1) That the prior art taught away from the claimed invention, *In re Geisler*, 116 F.3d 1465, 1471 (Fed. Cir. 1997); or (2) that there are new and unexpected results relative to the prior art, *In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990)."  *Id.*  Significantly, when, as here, "the claimed ranges are completely encompassed by the prior art, the conclusion [of obviousness] is even more compelling than in cases of mere overlap."  *In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003).

Summary judgment for lack of written description for all patents-in-suit is appropriate here because there is no genuine dispute that Largan improperly failed to describe the alleged inventions.  "The essence of the written description requirement is that a patent applicant, as part of the bargain with the public, must describe his or her invention so that the public will know what it is and that he or she has truly made the claimed invention."  *Abbvie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1298 (Fed. Cir. 2014) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002); *O'Reilly v. Morse*, 56 U.S. 62, 120–21 (1853)).  "[T]he purpose of the written description requirement is to ensure that the

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1   scope of the right to exclude, as set forth in the claims, does not overreach the scope

2   of the inventor's contribution to the field of art as described in the patent

3   specification." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed.

4   Cir. 2010) (*en banc*) (internal quotation omitted).  This Court may grant summary

5   judgment for lack of written description.  *See, e.g.*, *Atl. Research Mktg. Sys., Inc. v.*

6   *Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011).

7              1.      **Samsung is entitled to summary judgment that TW I255361**
                       **anticipates and/or renders obvious the '602 patent asserted claims**
8

9          The Court should grant summary judgment that asserted claims 5, 6, 11 and 12

10   of the '602 patent are invalid as anticipated and/or obvious in light of Taiwanese

11   Patent No. I255361.  There is no genuine dispute that TW I255361 is prior art to the

12   '602 patent under 35 U.S.C. 102(d), and that it discloses each and every limitation of

13   the asserted '602 patent claims or at least renders them obvious.

14          **Undisputed Material Facts.**  Largan filed the application for TW I255361 on

15   May 5, 2005, and it issued on May 21, 2006.  (SMF ¶¶ 206-07.)  Largan then filed the

16   application for the '602 patent in December 2006.  (*Id.* ¶ 119.)  TW I255361 describes

17   the same invention claimed in the '602 patent, explicitly disclosing each limitation of

18   the asserted claims.  (*Id.* ¶¶ 212-55.)  Dr. Bentley asserts that TW I255361 does not

19   describe the precise ranges recited in the '602 patent claims, but does not dispute that

20   the ranges in TW I255361 fully encompass the claimed ranges of the '602 patent.  (*Id.*

21   ¶¶ 224–26, 239–41.)  ████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████

24          **Argument.**  It is undisputed that TW I255361 is prior art to the '602 patent

25   under 35 U.S.C. § 102(d), which provides: "[a] person shall be entitled to a patent

26   unless . . . the invention was first patented or caused to be patented . . . by the

27   applicant . . . in a foreign country prior to the date of the application for patent in this

28   country on an application for patent . . . filed more than twelve months before the

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1  filing of the application in the United States."  It is undisputed the '602 patent was

2  filed after TW I255361 issued and more than twelve months after the application for

3  TW I255361 was filed.  (SMF ¶¶ 119, 206–07.)

4      Although Dr. Bentley asserts that TW I255361 does not describe the "same

5  invention" as claimed in the '602 patent, she applies the wrong legal standard.

6  Specifically, Dr. Bentley quibbles that the precise recited ranges of the '602 patent are

7  not stated in TW I255361.  (*Id.* ¶¶ 224, 241.)  But that is not the test.  A foreign patent

8  describes the "same invention" under § 102(d) if the claims of the later patent could

9  have been included in the foreign patent.  *In re Kathawala*, 9 F.3d 942, 945 (Fed. Cir.

10  1993).  Here, the '602 patent recites ranges fully encompassed by the ranges disclosed

11  in TW I255361.  (*Id.* ¶¶ 221–26, 240–43.)  There can be no dispute that the asserted

12  '602 patent claims could have been included in TW I255361.  *Cf. Kathawala*, 9 F.3d

13  at 947; *see also* M.P.E.P. § 2135.01(IV) (the 102(d) bar "applies regardless whether

14  the foreign patent contains claims to less than all aspects of the invention.").

15      There also can be no dispute that TW I255361 anticipates and/or renders

16  obvious '602 patent claims 5, 6, 11 and 12.  Each asserted claim depends on a number

17  of prior claims, and ultimately independent claim 1.  Dr. Bentley does not dispute that

18  TW I255361 discloses embodiments that meet each limitation of the claims on which

19  the asserted claims depend.  (*Id.* ¶¶ 212–19.)  Dr. Bentley also has failed to raise a

20  genuine dispute regarding the additional limitations of the asserted claims.

21      *Claim 5:*  Claim 5 adds that the Abbe number of the second lens (V2) satisfies

22  V2<25.  (*Id.* ¶ 220.)  But TW I255361 discloses V2<29, which encompasses and does

23  not significantly deviate from V2<25 (*Id.* ¶¶ 221-22), and thus anticipates.  *Perricone*

24  *v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005).

25      At the very least, the claimed range is *prima facie* obvious.  *Ormco Corp. v.*

26  *Align Tech., Inc.*, 463 F.3d 1299 (Fed. Cir. 2006) ("Where a claimed range overlaps

27  with a range disclosed in the prior art, there is a presumption of obviousness."

28  (citations omitted)).  Where, as here, the claimed range is fully encompassed by the

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1  prior art range, Largan must show teaching away, or new or unexpected results, to

2  maintain validity.  *See Iron Grip Barbell*, 392 F.3d at 1321–22.  Largan fails to make

3  any such showing.  Dr. Bentley summarily asserts "the narrower range is critical to the

4  invention."  (*Id.* ¶¶ 227.)  But she provides no support for that assertion— █████████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████ (*Id.* ¶¶ 229-230.)  Dr. Bentley identifies no evidence of

7  teaching away from the claimed range, or new or unexpected properties achieved by

8  going from V2<29 to V2<25.  (*Id.* ¶¶ 232–33.)  Dr. Bentley's unsupported speculation

9  is insufficient to raise a genuine issue of material fact.  *See, e.g.*, *Matthiesen v. Banc*

10  *One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999) ("the testimony of an

11  expert can be rejected on summary judgment if it is conclusory and thus fails to raise a

12  genuine issue of material fact"); *Smith v. Pac. Bell. Tel. Co., Inc.*, 649 F. Supp. 2d

13  1073, 1097 (E.D. Cal. 2009); *see also Titanium Metals Corp.*, 778 F.2d 775, 783

14  (noting where claimed and prior art values are "so close that *prima facie* one skilled in

15  the art would expect them to have the same properties," the claimed value "must

16  therefore be considered to have been obvious").

17      *Claim 6:*  Claim 6 adds the refractive index of the second lens (N2) satisfies

18  N2<1.65.  (*Id.* ¶ 235.)  TW I255361 discloses N2=1.607, which satisfies the recited

19  range.  (*Id.* ¶ 236.)  Dr. Bentley does not dispute this; her claim 6 opinion relies solely

20  on her claim 5 opinion because of dependency.  (*Id.* ¶ 237)   But TW I255361

21  invalidates claim 5, as discussed above.

22      *Claim 11:*  Claim 11 adds the center thickness of the second lens (CT2) satisfies

23  CT2<0.4 mm.  (*Id.* ¶ 238.)  TW I255361 discloses CT2<0.45 mm, (*Id.* ¶ 239.) which

24  entirely encompasses and does not significantly deviate from CT2<0.4 mm (*Id.* ¶ 240)

25  and thus anticipates.  *Perricone*, 432 F.3d at 1377.

26      At the very least, the claimed range—encompassed by the prior art—is obvious

27  as a matter of law because Dr. Bentley has not identified any evidence of teaching

28  away from the claimed range, or new or unexpected properties achieved by going

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

from CT2<0.45 to CT2<0.4 mm.  *See Iron Grip Barbell*, 392 F.3d at 1321–22; *Titanium Metals*, 778 F.2d at 783.  Dr. Bentley merely asserts without support that "the narrower range is critical to the invention."  (*Id.* ¶ 244-45.)  Unsupported speculation is insufficient to raise a genuine issue of material fact.  *See, e.g.*, *Matthiesen*, 173 F.3d at 1247; *Smith*, 649 F. Supp. 2d at 1097.

*Claim 12:*  Claim 12 adds the edge thickness of the first lens (ET1) satisfies ET1<0.4mm.  (*Id.* ¶ 252.)  TW I255361 inherently discloses ET1=0.27 mm, which satisfies the recited range.  (*Id.* ¶ 253)  Dr. Bentley does not contend otherwise.  (*Id.* ¶ 254.)  Her claim 12 opinion relies solely on her claim 11 opinion because of dependency.  (*Id.* ¶ 255.)  But TW I255361 invalidates claim 11, as discussed above.

In sum, there is no genuine dispute of material fact that TW I255361 anticipates or renders obvious each asserted claim of the '602 patent and Samsung is entitled to judgment as a matter of law.

**2.    Samsung is entitled to summary judgment that the asserted claims are invalid for lack of written description**

The Court should grant summary judgment that the asserted claims of each patent-in-suit are invalid for lack of written description.  The asserted patents disclose only very specific embodiments with specific values for the lens parameters, but then claim broad ranges, in many cases unbounded.  However, as Samsung's experts have opined, a person of ordinary skill reading the patents would not have understood the inventors to have been in possession of those ranges.

Largan's proffered expert, Dr. Bentley, does not genuinely disagree, but rather applies the wrong legal standard, analogizing the patents to gold mining:

> The Patents-in-Suit inform the miner that a particular mountain has gold.  That does not guarantee that everywhere the miner digs on that mountain he will automatically find gold.  But it does significantly increase the miner's odds of finding gold compared to digging in random locations.

(*Id.* ¶ 556.)  But the asserted claims are not ***method*** claims to how to design a lens; rather they are ***apparatus*** claims; Largan is attempting to assert an exclusionary right

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1  over every lens design in several mountains, good or bad, designed or yet to be

2  designed, because it purportedly found a few pieces of gold in one corner. The

3  Supreme Court and Federal Circuit have rejected that approach, and when viewed

4  under the correct standard, Dr. Bentley confirms the lack of written description.

13  **Undisputed Material Facts.** The patents-in-suit contain claims for lens

14  designs using ranges, in some cases unbounded, related to lens shape and other

15  parameters such as radii of curvature, focal length ratios, lens thicknesses, Abbe

16  number and refractive index. (*Id.* ¶¶ 33-45, 123-41, 260-64, 330-40, 378-91, 459-70.)

17  Each patent provides one or more lens design embodiments having specific values for

18  these parameters; the embodiments do not describe or account for the ranges in the

19  asserted claims. (*Id.*)

23  However, Samsung's expert Dr. Sasian

24  found that altering the specifically described lens designs within the claimed ranges

25  has a drastic, negative impact on lens performance. (*Id.* ¶¶ 638.)

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

Dr. Bentley did not dispute Dr. Sasian's findings.  Instead, she analogized the patents to mining for gold, stating they inform a miner that a particular mountain has gold, thereby increasing the odds of finding gold.  (*Id.* ¶ 555.)  The asserted claims, however, are not method claims, but apparatus claims to final lens designs.  (*Id.* ¶¶ 34, 124, 261, 331, 379, 460.)  Dr. Bentley's report contained no analysis of whether lenses beyond the embodiments existed with acceptable image quality, and

Largan asserted "optical systems rely upon multiple mathematically precise parameters, many of which can vary infinitely through positive and negative values that include multiple significant digits and even fractional values, in which small changes can have dramatic effects upon performance."  (*Id.* ¶¶ 5149, 147, 270, 346, 397, 476.)  And Dr. Bentley opined—for her obviousness opinions—one skilled in the art would not be able to predict the results of even small changes:

> A key concept in this iterative process is that changes to one parameter or one lens element will require changes to other parameters or other lens elements to compensate, sometimes quite dramatic changes.  Moreover, even seemingly minor changes can introduce significant new performance problems . . .  It is also important to note that compensating changes typically are not one-to-one.  For example, compensating for an increase in the Abbe number of one lens element typically cannot be solved by simply decreasing the Abbe number of a different lens element, but instead may require changes to multiple parameters (such as refractive powers, radius of curvature, aspheric coefficients, and Abbe numbers) for multiple lens elements.

(*Id.* ¶ 556.)

**Argument.**  Summary judgment is appropriate here because (1) unrebutted evidence shows values within the claimed ranges that are not described in the patents-in-suit result in unusable lenses inconsistent with the patents; and (2) Largan does not

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

dispute this but instead relies on a legally erroneous analogy—mining for gold—that serves only to highlight it.  The Federal Circuit has made clear that the disclosure of a few isolated species such as Largan has done here is insufficient to claim a broad genus in a field that Largan insists is unpredictable:

> One factor in considering the question is how large a genus is involved and what species of the genus are described in the patent. . . . [A]nalogizing the genus to a plot of land, *if the disclosed species only abide in a corner of the genus, one has not described the genus sufficiently to show that the inventor invented, or had possession of, the genus.  He only described a portion of it*.  That is the case here. . . . With the written description of a genus . . . merely drawing a fence around a perceived genus is not a description of the genus.  One needs to show that one has truly invented the genus, i.e., that one has conceived and described sufficient representative species encompassing the breadth of the genus.  Otherwise, one has only a research plan, leaving it to others to explore the unknown contours of the claimed genus.

*Abbvie Deutschland*, 759 F.3d at 1299-1300.  Largan claims broad arbitrary ranges for certain lens parameters based on a few isolated, unrepresentative embodiments with specific lens values.  (*E.g.*, SMF ¶¶ 53, 61, 149, 166, 297, 353, 414, 503.)  Dr. Bentley does not disagree; according to her analogy, Largan has claimed a mountain for each claim while identifying just a few pieces of (alleged) gold within them, leaving it to the person skilled in the art to dig through the mountains to find other pieces of gold, if any exist.  (*Id.* ¶ 531.) ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████  "Increasing the odds" one skilled in the art will be able to practice the claimed invention is legally insufficient to show possession of the full scope of the claimed invention.  *Ariad*, 598 F.3d at 1340; *Abbvie Deutschland*, 759 F.3d at 1299-1300.

Summary judgment of invalidity is appropriate based on the undisputed evidence of Samsung's experts Dr. Sasian and McGuire, including their detailed

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

opinions regarding: (1) the extreme breadth of Largan's asserted claims, and their respective limitations; and (2) the scant disclosure in the patents' specifications, and how they fail to demonstrate the inventors' possession of the full scope of the claimed inventions. (SMF ¶ 47, 143, 266, 342, 393, 472.) The following are merely examples of elements in the asserted claims that lack written description in the specification.

*'925 patent*: The asserted claims recite the relation $1.5 > |f/f1| > 1.0$, where f is the effective focal length of the system and f1 is the focal length of the first lens element. But the two embodiments of the patent have $|f/f1|$ values of 1.077 and 1.109, only representing a small sliver of the claimed range. (*Id.* ¶ 53.)

(*Id.* ¶ 57.) Other inadequately supported claim limitations include: $|L1R1/L1R2| < 0.5$, $|L3R1/L3R2| > 0.3$, $1.2 > |f/f2| > 0.7$, $1.2 > |f/f3| > 0.3$, $CT1 < 1.0$ mm, $CT2 < 0.6$ mm, $CT2 < 0.45$ mm, $v2 < 29$. (*Id.* ¶¶ 60-117.)

*'602 patent*: Asserted claims 5 and 6 recite $v2 < 25$, while claims 11 and 12 recite $v2 < 28$, where v2 is the Abbe number of the second lens element. (*Id.* ¶¶ 148, 157.) However, the lone embodiment with a v2 less than 28 has a value of 23.4. (*Id.* ¶ 149.) Yet Largan has asserted "changing the Abbe number would affect performance and would require changing the material of the lens element, which in addition to cost or manufacturing concerns may also impact the index of refraction of

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1  the lens element, which in turn would affect other parameters such as focal length."

2  (*Id.* ¶¶ 151, 159.) █████████████████████████████████████████

3  █████████████████████████████████████████████████████████

4  █████████████████████████████████████████████████████████

5  █████████████████████████████████████████████████████████

6  █████████████████████████████████████████████████████████

7  █████████████████████████████████████████████████████████

8  ███ ███████████████████████████████████████████████████

9  █████████████████████████████████████████████████████████

10  ████  (*id.* ¶¶ 154, 162.).   Other inadequately supported claim limitations include:

11  $f/f1>0.95$, $|f/f2|>0.34$, $N2<1.65$, $CT2<0.4$ mm, $ET1<0.4$ mm.  (*Id.* ¶¶ 165-204.)

12  *'807 patent*:  Sole asserted claim 1 recites "a second lens element" with no limit

13  placed on the shape of the image-side surface, but all embodiments have a convex

14  image-side surface.  (*Id.* ¶¶ 284-86.)  Thus, there is no support for a concave image-

15  side surface to the second lens.  Largan asserted "bending a single lens element can

16  negatively impact the performance of the overall system."  (*Id.* ¶ 293.) ████████

17  █████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████  (*Id.* ¶

19  294.)  Likewise, no limit is placed on the shape of the object-side surface of the third

20  lens element, yet all embodiments have a convex object-side surface.  (*Id.* ¶¶ 289-90.)

21  Thus, there is no support for a concave object-side surface to the third lens.  Other

22  inadequately     supported     claim     limitations     include:     $-0.70<f/f2<-0.24$,

23  $-0.30<R1/R2<0.00$, $-0.40<R3/f<-0.24$, $0.75<SL/TTL<0.90$.  (*Id.* ¶¶ 293-323.)

24  *'860 patent*:  Sole asserted claim 7 recites "$28.0<V1-V2<42.0$", where V1 and

25  V2 are the Abbe numbers for the first and second lenses. (*Id.* ¶ 351.)  But the four

26  embodiments that actually embody the claim[3] have V1-V2 values ranging from just

27  ───────────────────

28  [3] "Embodiments" 1 and 2 have a concave object-side surface on the fifth lens as

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

32.1 to 34.5.  (*Id.* ¶¶ 353.)   The comments discussed above with respect to Abbe number for the '602 patent apply equally here.   Other inadequately supported claim limitations include 0.00<f/f3<1.90 and 0.7<SL/TTL<1.2.  (*Id.* ¶¶ 359-71.)

*'190 and '191 patents*:   All asserted claims recite "a third lens element," without any limit on lens shapes and powers, but all embodiments have a convex object-side surface and concave image-side surface.  (*Id.* ¶¶ 402-03, 482-83.)  Largan has asserted "bending a single lens element can negatively impact the performance of the overall system."  (*Id.* ¶¶ 411, 491.) ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████  (*Id.* ¶¶ 412, 492.)  Likewise, no limit is placed on the shape of the image-side surface of the first lens, yet all embodiments have a concave image-side surface.  (*Id.* ¶¶ 407-08, 487-88.)  Also, '190 patent asserted claims 1, 7, and 26 recite "a fourth lens element" with no proper limit on the shape of the object-side surface, yet all "embodiments" have a concave object-side surface.  (*Id.* ¶¶ 430-31.)

Similarly, all asserted claims of the '191 patent require "a fourth lens element having a concave object-side surface and a convex image-side surface," with no limitation on the refractive power of the fourth lens element.  (*Id.* ¶ 509.)  Yet all "embodiments" have positive refractive power, and the specification sets forth the purported advantages of having a fourth lens element with positive refractive power: "the fourth lens element has positive refractive power so that the positive refractive power of the first lens element can be effectively distributed to reduce the sensitivity of the imaging lens system." (*Id.* ¶¶ 510, 516)  Each claim of both of the '191 patent's parent applications, U.S. Patent Nos. 8,233,244 and 8,520,324, as well as the related '190 patent, also requires a fourth lens element with positive refractive power, further indicating the importance the named inventors placed on this limitation.  (*Id.* ¶ 517.)

opposed to convex as the claim requires.  (SMF ¶ 348.)  "Embodiment" 4 has a *V1-V2* value of 6.3 outside the claimed range of 28.0<*V1-V2*<42.0.  (*Id.* ¶ 342.)

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

Other inadequately supported claim limitations for the '190 patent include: -1.5<f4/f5<-0.5, 0.5<(T12/f)x100<15, -1.5<f4/f5≦[-]0.79 1.0<f/f1<1.8, V1-V2>30. (*Id.* ¶¶ 435-52.)  Other inadequately supported claim limitations for the '191 patent include: V1-V2>20, 1.0<f/f1<1.8.  (*Id.* ¶¶ 493-508.)

Supreme Court precedent explains the "evil" of a patentee claiming "more than he has invented, although no other person has invented it before him" is that "[h]e prevents others from attempting to improve upon the manner and process which he has described in his specification and may deter the public from using it." *O'Reilly*, 535 U.S. at 736.  That "evil" indisputably is present here and the Court should grant summary judgment of invalidity.  *Atl. Research Mktg.*, 659 F.3d at 1353; *Univ. Of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004).

### D.   Summary Judgment on Damages Issues

#### 1.   Samsung is entitled to summary judgment of no constructive notice because Largan failed to mark under 35 U.S.C. § 287

To obtain pre-suit damages, Largan bears the burden of showing Samsung had notice pursuant to 35 U.S.C. § 287.  *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).  Absent actual notice, Largan must prove it gave "notice to the public" that its products are patented by marking its embodying products with the patent number.  35 U.S.C. § 287(a).  Largan must prove it "consistently marked substantially all of its patented products." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993).

Largan's marking obligations do not end with the initial sale; Largan's customers ███████████████ also are obligated to mark products containing Largan's allegedly-embodying lenses.  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).  Section 287(a) applies to patented articles made "for or under" the patentee.  35 U.S.C. § 287(a).  Thus, a "licensee who makes or sells a patented article does so 'for or under' the patentee." *Amsted*, 24 F.3d at 187.  This includes both express and implied licensees (*i.e.*, customers). *Id.*

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

**Undisputed Material Facts.**  Largan identified ███████ of Largan lens modules which it contends embody the asserted claims of the patents-in-suit.  (SMF ¶¶ 558-63.)  ███████████████████████████████████

Largan's asserted patents issued on the following dates: '925 (8/28/2007), '602 (7/1/2008), '807 (4/10/2012), '860 (8/13/2013), and '190 and '191 (3/11/2014).  (*Id.* ¶¶ 24, 118, 256, 324, 372, 453.)  Largan filed suit on 11/14/2013 for the '925, '602, '807, and '860 patents, and 3/31/2014 for the '190 and '191 patents.  (*Id.* ¶¶ 1-4.)

**Argument.**  To obtain pre-suit damages, Largan contends it has made and sold lenses covered by the patents-in-suit and that these products are marked within the meaning of § 287.[4]  (*Id.* ¶ 582.)  Assuming *arguendo* this contention is correct, there is no genuine dispute of material fact Largan failed to comply with § 287's requirements; the Court should grant summary judgment on Largan's claim to pre-suit damages based on constructive notice of the patents-in-suit.

In alleging compliance with § 287, Largan makes a single argument: ██████

---

[4] As explained in § I.D.2., Largan has failed to provide any admissible evidence in support of its contention that any of its products embody a patent-in-suit.

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1

2

3

4

5

6 ).

7  More importantly for § 287, however, summary judgment is proper because

8

9  Under § 271(a), anyone who makes, uses,

10  offers for sale, sells, or imports a product embodying a patented claim, without

11  authorization, infringes the patent.

12

13

14

15

16

17

18

19

20

21  This accords with § 287's goal; to avoid innocent infringement, notice must be

22  provided in the U.S.—the only place where infringement can occur.

23

24

25

26  ., putting them in the primary position to provide such

27  notice to the public.  But they do not mark their products, and

28  . Consequently, Samsung had no constructive notice that

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1  Largan's lens modules embody the patents-in-suit.  The Court should grant summary

2  judgment of no constructive notice.  *See, e.g.*, *DR Sys., Inc. v. Eastman Kodak Co.*,

3  2009 WL 2632685, at *2–*5 (S.D. Cal. Aug. 24, 2009).

4        **2.**  ███████████████████████████

5  ████████████████████████

6  **Undisputed   Material   Facts.**  ████████████████

7  ████████████████████████████████████

8  ████████████████████████████████████

9  ████████████████████████████████████

10 ████████████████████████████████████

11 ████████████████████████████████████

12 ████████████████████████████████████

13 ████████████████████

14     **Argument.**  Summary judgment is appropriate on Largan's attempt to inject an

15 entirely new patent infringement claim into this case.  ████████████████

16 ████████████████████████████████████

17 ████████████████████████████████████

18 ████  Moreover, the Court limited Largan to 20 claims in an effort to narrow the

19 action (Dkt. 38), yet Largan presents not just a 21st claim, but an entirely new patent

20 for the first time during expert discovery.  *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 67

21 F. Supp. 3d 1100, 1128 (N.D. Cal. 2014) ("claims used to rebut alternatives count

22 toward the number of asserted claims and subject to validity challenge").

23     Even if considered however, the Court should grant summary judgment that ███

24 ████████████████████████████████████

25 ████████████████████████████████████

26 ████████████████████████████████████

27 ████████████████████████████████████

28 ████████████████████████████████████

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

For damages purposes, the relevant question is whether Samsung had an acceptable alternative to the accused lens systems. *King Instruments Corp. v. Perego*, 65 F.3d 941, 953 (Fed. Cir. 1995).

### 3.    Samsung is entitled to summary judgment of no willful infringement.

This Court should grant summary judgment of no willful infringement because Largan cannot show by clear and convincing evidence that Samsung was objectively reckless in this case, particularly when Largan itself could not show how the elements of its claims were satisfied in the third party lenses used in Samsung products. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*).  Largan should have withdrawn this allegation long ago as it has identified no evidence of willfulness. Largan cannot merely point to Samsung's "knowledge" and hope to leave the issue for the jury. *Id.*   To the contrary, Courts around the nation routinely grant summary judgment of no willfulness in cases such as this one. *See, e.g.*, *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, -- F. Supp. 3d ---, 2015 WL 4611285, at *9 (D. Del. 2015); *Multimedia Patent Tr. v. Apple Inc.*, 2012 WL 6863471, at *16–17 (N.D. Cal. Nov. 9, 2012).   Regardless of whether Largan can establish that Samsung has infringed a valid claim of the patents-in-suit, Samsung has not willfully infringed.

**Undisputed Material Facts.**

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

Samsung also has reasonable defenses to Largan's infringement claims.  For example, Drs. Sasian and McGuire have explained how the claimed inventions are invalid.  (*Id.* ¶¶ 46–47, 142–43, 265–66, 341–42, 392–93, 471–72.)  Dr. Sasian also has explained why Largan failed to meet its burden to show infringement.  (*Id.* ¶ 609.)

**Argument**.  Summary judgment should be granted because Largan cannot show **by clear and convincing evidence**, *inter alia*, that Samsung "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371.  Despite the clear requirements of the Patent Local Rules, during fact discovery Largan could not and did not show how the accused third party lenses allegedly met the asserted claims, even for the products for which Samsung was able to obtain lens design files.  (SMF ¶¶ 609–11.)  Largan's inability to substantiate an infringement claim is plainly shown in Largan's infringement contentions.  (*Id.*) There can be no factual basis to find an objectively-high likelihood of infringement where Largan itself cannot explain its infringement allegations and chose not to pursue relevant discovery ▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶ 605–6.)

Largan's only alleged evidence of "willful infringement"—the pre-suit letters— raises no genuine issue of material fact.  As Largan apparently acknowledges, it must prove willfulness predating the filing of this case.  *Pacing Techs., LLC v. Garmin*

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

*Int'l, Inc.*, 2013 WL 444642, at *3 (S.D. Cal. 2013) ("allegations of post-filing knowledge are generally insufficient to support a claim"). Mere knowledge, however, of a patent does not show willfulness. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 636, 644 (D. Del. 2008) (citing *Black & Decker*, 260 F. App'x at 290). Because Largan's letters are devoid of the analysis necessary to support infringement (*e.g.*, focal lengths, distances, curvatures, or even provide enough information to tell if a lens surface is convex or concave), they cannot possibly show an objectively high likelihood that Samsung's actions constituted infringement of a valid patent. (SMF ¶¶ 623-36.) ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Equally importantly, willful infringement is defeated as a matter of law by a single reasonable defense, whether successful or not and whenever raised. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, -- F.3d ---, 2015 WL 4639309, at *14-15 (Fed. Cir. Aug. 4, 2015). Space does not permit Samsung to present all of its meritorious defenses in this motion, but Samsung respectfully submits those presented here more than adequately reflect Samsung has acted objectively. (*See supra* §§ I.B–I.C.) Moreover, reasonable defenses not raised on summary judgment include the obviousness of the claimed inventions —Drs. Sasian and McGuire have shown that the minor differences between the prior art and the claimed inventions would have been obvious and routinely achieved through standard optimization. (SMF ¶¶ 46, 142, 265, 341, 392, 471.) These defenses cannot be disregarded as not reasonable, especially where, as shown above with respect to obviousness and written description,



**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1    Largan and its experts rely on an erroneous legal standard in response.  Regardless of

2    the outcome, they are objectively reasonable.  *See, e.g.*, *Multimedia Patent Tr.*, 2012

3    WL 6863471 at *17 (granting summary judgment on the objective prong despite

4    expert disagreement re invalidity); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,

5    2010 WL 583960, at *9 (N.D. Cal. Feb. 16, 2010) (granting summary judgment

6    against willfulness); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk*

7    *Contractors USA, Inc.*, 617 F.3d 1296, 1313 (Fed. Cir. 2010) (affirming summary

8    judgment against willfulness).  Summary judgment should be granted.

9    **II.    *DAUBERT* EXCLUSIONS**

10       **A.    General Legal Standards**

11       Courts are charged with a "gatekeeping role" to ensure expert testimony "is not

12   only relevant, but reliable."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589

13   (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *United States*

14   *v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007).  This gatekeeping obligation applies to

15   all expert testimony.  *Kumho Tire*, 526 U.S. at 138; Fed. R. Evid. 702.  The proponent

16   of expert testimony bears the burden of proving its admissibility.  *See Cooper v.*

17   *Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

18       To be admissible, expert testimony must be "sufficiently tied to the facts of the

19   case that it will aid the jury in resolving a factual dispute" and "rest[] on a reliable

20   foundation and [be] relevant to the task at hand."  *Daubert*, 509 U.S. at 591 (internal

21   citation omitted), 597; *see also* Fed. R. Evid. 702.  An expert must be qualified to

22   testify on the subject matter for which the expert is proffered "by knowledge, skill,

23   experience, training or education."  Fed. R. Evid. 702.  A court must ensure that an

24   expert does not offer opinions that extend beyond the expert's area of expertise.  *See*

25   *United States v. Chang*, 207 F.3d 1169, 1177 (9th Cir. 2000).  The court should

26   exclude an expert's opinion that is merely a layperson's interpretation of evidence

27   disguised as expert opinion.  *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491

28   F.3d 1342, 1348-59 (Fed. Cir. 2007).

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

**B.    The Court Should Exclude Opinions From Largan's Experts Regarding Reverse Engineering And Patent Benefits**

To support her infringement opinion, Dr. Bentley relies heavily on reverse engineering work performed by Largan employee Mr. Chen and other unidentified individuals, as well as consultant Dr. Schmidt. (Ex. 1 (Bentley Op. Rpt.) at ¶¶ 126-49, Exs. A-1-A-4, B-1-B-8; ████████████████████████  This work, which violated expert discovery rules, should be excluded under *Daubert* and other admissibility standards. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████  Moreover, Dr. Bentley chose to rely on Largan's reverse engineering analysis ████████████████████████████████████

████████████████████████████████████████

Similarly, Dr. Bentley's unsubstantiated opinions on two damages issues should be excluded. First, Dr. Bentley opines that the patents-in-suit (collectively and untethered to any particular claim) "may provide a reduction in thickness as high as 20%," and suggests 10% as "a conservative estimate." (Ex. 1 (Bentley Op. Rpt. at ¶¶ 213-14; Ex. 3 ████████████████████  However, she acknowledges "[w]ithout a complicated analysis of competing designs it is difficult to know exactly what reduction in overall thickness that the patents-in-suit provide." (Ex. 1, Bentley Op. Rpt. at ¶ 213.) ████████████████████████████████

████████████████████████████████  Second, Dr. Bentley's report similarly speculates that the patents-in-suit (collectively and untethered to any particular claim) "allows for a phone or tablet of the same thickness as a common phone of [sic] from 2-3 years prior but with better image quality." (Ex. 1 (Bentley Op. Rpt.) at ¶¶ 213-214; ████████████████████████  No analysis was presented. (Ex. 1 (Bentley Op. Rpt.) at ¶ 214.) Mr. Napper's damages report

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

relies on these unfounded opinions.  (Ex. 10 (Napper Rpt.) at 55-60.)

      1.      **Dr. Bentley's reverse engineering analysis relies on the unreliable work and opinions of others**

      Dr. Bentley's reverse engineering opinions are fatally flawed and unreliable. Despite requiring expertise and precision to perform reverse engineering analysis on something as small as the accused lens modules, ██████████████████████████████████████████████████████████████████████████████████████ Thus, she cannot reliably or credibly attest to the reliability or relevance of the underlying data or that it is of the type she would rely on in her ordinary work. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Untrained personnel.** █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1  ███████████████████████████████████████████████████████

2  ██████████████████████████████████████████

3       Even Mr. Chen, the Largan employee involved in a subset of Largan's reverse

4  engineering efforts, ██████████████████████████████████████

5  ██████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████

10  **Improper equipment.** ███████████████████████████████

11  ██████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████

15  ██████████████████████████████████  It is undisputed that the use of

16  improper equipment can cause unreliable results. ████████████████████

17       **Methodological flaws.**  Four major methodological flaws severely taint the

18  reliability of the underlying reverse engineering data, especially in this case where the

19  allegedly infringing lens components are fractions of a millimeter in size.

20  ████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████

23  █████████████████████████████████████████████

24  ██████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

*Third*, Dr. Schmidt's and Mr. Chen's measurements of indices of refraction and Abbe numbers were improper.

*Fourth*, the results of the reverse engineering process are unreliable as Largan presents no error analysis.

Dr. Bentley's reliance on the unreliably determined values for thickness,

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1  distance between lenses, radius of curvature, aspheric coefficients, index of refraction,

2  and Abbe number alone justifies excluding her reverse engineering opinions.

3  However, the problems with the analyses are further compounded because Dr. Bentley

4  uses these flawed values to calculate additional parameters allegedly found within the

5  accused lenses.  For example, the focal lengths of the individual lenses depend on the

6  measurement of the index of refraction performed ████████████████████████████

7  ████████████████████  The potentially large margin of error in these parameters

8  creates serious reliability concerns here because the asserted claims cover specified

9  ranges of parameters. █████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████  Similarly, the damage and alteration of the lens structure resulting from

13 ████████████████████████████████████s makes Largan's results unreliable as

14 the lens being tested differs from the accused lenses. *Id.* at ¶¶ 98, 105.

15     **Lack of supervision or direction.**  Dr. Bentley did not supervise or direct any

16 of the underlying reverse engineering or measurements.  ███████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████  In short, Dr. Bentley did nothing to ensure the

26 reliability of the underlying data based upon her own expertise.[6]  █████████████

27 ─────────────────────

28 [6] As explained in Samsung's Motion to Strike (Dkt. 162 at 21-23), neither Mr. Chen's nor Dr. Schmidt's work has been exposed to the rigors required of expert testimony.

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

Thus, neither Mr. Chen's nor Dr. Schmidt's analysis is reliable.

### 2.     Dr. Bentley performed no thickness or image quality analysis

Despite opining that the alleged inventions in the patents-in-suit allow designs that are at least 10% thinner and have improved image quality, Dr. Bentley performed no analysis to support these opinions.

**Thickness.**     Dr. Bentley admitted "[w]ithout a complicated analysis of competing designs it is difficult to know exactly what reduction in overall thickness that the patents-in-suit provide." (Ex. 1 (Bentley Op. Rpt.) at ¶ 213.)

**Image quality and lower light capability.**     Similarly, the only support Dr. Bentley cites in her report for her statements regarding image quality generally are quotes from the patent specifications. (Ex. 1 (Bentley Op. Rpt.) at ¶ 213; *see also id.* at ¶¶ 41-115.) She cites no support, not even the patents, for her assertion regarding

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1   improved low light performance.  (*Id.* at ¶ 214.)  ████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ████████████████████████████████

5       Such speculation is the reason why courts exercise a gatekeeping function on

6   expert testimony.  *Daubert*, 509 U.S. at 591, 597.  The Court should exclude each

7   opinion and all opinions that rely on them.  (Ex. 1 (Bentley Op. Rpt.) at ¶¶ 211-214;

8   Ex. 33 (Johnson Rpt.) at ¶¶ 23-28, pp. 20-31; Ex. 10 (Napper Rpt.) at 55-60.)

9       **C.   The Court Should Exclude Opinions From Largan's Experts**
10          **Regarding Largan's Allegedly Embodying Products**

11      Under *Georgia-Pacific*, the established profitability of a product is only

12  relevant insofar as the product is "made under the patent."  *Georgia-Pacific Corp. v.*

13  *U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Allowing otherwise

14  would violate the Federal Circuit's admonition to "carefully tie proof of damages to

15  the claimed invention's footprint in the market place."  *ResQNet.com v. Lansa*, *Inc.*,

16  594 F.3d 860, 869 (Fed. Cir. 2010).

17      Mr. Napper's damages opinions include analysis based on the purported

18  profitability of a limited subset of products Largan alleged to embody the patents-in-

19  suit.  (Ex. 10 (Napper Rpt.) at 34-36.)  ████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████

23      Mr. Napper's profits analysis should be excluded because it is entirely based on

24  an assumption that there are products covered by the patents when, in fact, there is no

25  analysis proving any Largan product on which he relies actually embodies a patent-in-

26  suit.  ████████████████████████████████████████████

27  ████████   He had to because Largan's interrogatory response and Dr. Bentley's

28  report, upon which he relies, provide no support.  (Ex. 10 (Napper Rpt.) at 12.)

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

**Interrogatory response.**  Samsung' Interrogatory No. 2 asked Largan for its contention of how it complied with its § 287 marking obligation.  (Ex. 20 (1/9/2015 3rd Supp. Resp. to Rog. 2).)   Largan's response contained an unsupported list of allegedly embodying products.  (*Id.*)  Largan's contention, however, fails to carry its burden to prove any product was "made under the patent[s]," because there is no analysis as to how any of these products meets the claim limitations.

**Dr. Bentley.**  Dr. Bentley's report also does not carry this burden.  It contains no technical analysis establishing that any Largan product actually embodies a patent-in-suit.  (Ex. 1 (Bentley Op. Rpt.) at ¶¶ 215-216.)  Instead, Dr. Bentley's report relies solely on the same interrogatory response as Mr. Napper.  (*Id.*)

Largan has not presented any admissible evidence to carry its burden of proof on this issue.  *See Georgia-Pacific*, 318 F. Supp. at 1120 (requiring products be "made under the patent").  Much like an infringement analysis, Largan's experts would have had to perform an element-by-element analysis of the allegedly embodying products—they did not.  Dr. Bentley should not be permitted to present her conclusory assertion that Largan products are made under the patents-in-suit.  And Mr. Napper's opinions related to alleged embodying product profitability and price differential do not rest on "a reliable foundation" and should be excluded.  *Daubert*, 509 U.S. at 597.

**D.    The Johnson Survey And Related Opinions Should Be Excluded**

Flawed and unreliable surveys are inadmissible.  *1-800 Contacts*, *Inc. v. Lens.com, Inc.*, 2010 WL 5186393, at *8 (D. Utah Dec. 15, 2010) (excluding survey where "the form of the question strongly suggested the response").  "Allowing the jury to hear such evidence not tied to the claimed invention risks 'compensation for

**HIGHLIGHTED CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

infringement [that] punishes beyond the reach of the statute." *See Fractus, S.A. v. Samsung*, 09-cv-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (excluding survey regarding demand for internal antennas in cell phones where patent claimed only one type of internal antenna). When evaluating the objectivity of a survey, a court must consider the degree of suggestiveness of every survey question. *See 1-800 Contacts*, 2010 WL 5186393, at *7. "If the crucial question [in a survey] is sufficiently ambiguous or unclear, it may be the basis for rejecting the survey." *Id.*

The survey, however, is fatally flawed due to unfounded premises, the failure to differentiate between each asserted patent, ambiguity, and inherent bias. Each of these flaws alone merits the exclusion of the survey, and together they render Mr. Johnson's survey completely unreliable and divorced from the specific facts of this case. Accordingly, Mr. Johnson's survey fails to meet the *Daubert* standard and should be excluded along with Mr. Napper's opinions relying on it. *1-800 Contacts*, 2010 WL 5186393, at *8 (excluding survey because "the flaws in this survey's universe and crucial questions are so substantial as to render the survey unreliable.").

**<u>Unfounded premises.</u>**

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14 **<u>Apportionment failure.</u>**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

1   <u>**Systemic ambiguity.**</u> ███████████████████████████

2   ████████████████████████████████████████████████

3   ████████████████████████████████████████████████

4   ████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████   ███████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ███████████████████████   ██████████████████████

10   ████████████████████████████████████████████████

11   ████████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ██████████████████████████████

15   <u>**Inherent bias.**</u> ███████████████████████████

16   ████████████████████████████████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████

21   <u>*Biasing feature selection.*</u> ████████████████████

22   ████████████████████████████████████████████████

23   ████████████████████████████████████████████████

24   ██ ███ ██████ ██████ █████ █████ ████████

25   ████████████████████████████████████████████████

26   ████████████████████████████████████████████████

27   ████████████████████████████████████████████████

28   ████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

*Failure to randomize.*

*Failure to validate.*

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Samsung's motion for summary judgment and *Daubert* motion.

---

[7] Notably, Largan's patents-in-suit do not cover "cameras" generally, thus making the survey overbroad.

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY**

DATED:  September 3, 2015                  Respectfully submitted,

                                          */s/ David W. Higer*

                                          KIRKLAND & ELLIS LLP
                                          Gregory S. Arovas, P.C. (*pro hac vice*)
                                          garovas@kirkland.com
                                          Edward C. Donovan (*pro hac vice*)
                                          edonovan@kirkland.com
                                          Todd M. Friedman, P.C. (*pro hac vice*)
                                          todd.friedman@kirkland.com
                                          David W. Higer (*pro hac vice*)
                                          dhiger@kirkland.com
                                          LEWIS KOHN & WALKER LLP
                                          Kent M. Walker (Bar No. 173700)
                                          kwalker@lewiskohn.com

                                          Attorneys for Defendants/Counterclaim
                                          Plaintiffs Samsung Electronics Co., Ltd.
                                          and Samsung Electronics America, Inc.